IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TERESSA S. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3085 |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Teressa Johnson ("Johnson") claims in this Social Security appeal that the Commissioner's decision to deny her disability benefits is contrary to law and not supported by substantial evidence. The Commissioner's decision will be affirmed.

## BACKGROUND

On April 29, 2004, Johnson protectively filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging that she was unable to work on account of fibromyalgia pain, depression, anxiety, vision problems, mental confusion and concentration difficulties.  (Tr. 72, 73, 92.) Johnson's application was denied initially and on reconsideration, and she appealed its denial to an administrative law judge ("ALJ").

An administrative hearing was held on August 8, 2005.  (Tr. 548.)  Testimony was provided by Johnson, who was represented by counsel, by a vocational expert ("VE") under contract with the Commissioner of Social Security, and also by a VE retained by Johnson.  (Tr. 549.)

The ALJ issued an adverse decision on May 12, 2006. (Tr. 12-26.) The ALJ concluded that (1) Johnson had not engaged in substantial gainful activity since the alleged disability onset date; (2) Johnson had severe impairments, including (a) somatoform disorder, not otherwise specified, (b) venous insufficiency, (c) major depression, (d) dysthymic disorder, (e) depression, not otherwise specified, (f) mild degenerative changes of the left temporomandibular joint, (g) carpal tunnel syndrome and (h) obesity; (3) Johnson's impairments, alone or in combination, did not meet or equal an impairment listed in 20 C,F.R., Part 404, Subpart P, Appendix 1; (4) Johnson lacked the residual functional capacity ("RFC")[1] to return to her past relevant work; and (5) considering Johnson's age, education, work experience and RFC, she could perform unskilled, sedentary jobs that exist in significant numbers in the regional or national economy, such as certain cashier jobs. (*Id*.)

Johnson filed a request for further review by the Appeals Council, which was denied on July 18, 2006. (Tr. 8.) Johnson then appealed the Commissioner's ruling to this court. *See Johnson v. Astrue*, Case No. 8:06CV586 (D. Neb. 2006). On appeal, Johnson argued that the ALJ erred in (1) finding that her medically determinable impairments did not include fibromyalgia; (2) failing to explain how her obesity was considered in the decision; (3) failing to consider her somatoform disorder in reaching the ruling and (4) failing to consider the combined effects of her impairments and the side effects of her medications. *Johnson v. Astrue*, Case No. 8:06CV586 at filing 12. (D. Neb. 2006).

On July 27, 2007, the court entered an order reversing and remanding the case for further proceedings. (Tr. 663-71.) The court concluded that the ALJ erred in finding that fibromyalgia was not a medically determinable impairment. (*Id.*) The

---

[1] RFC, or "residual functional capacity," is what the claimant is able to do despite limitations caused by all of the claimant's impairments. *Lowe v. Anfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)).

2

court found that the ALJ was not at liberty to reject the fibromyalgia diagnosis of Johnson's treating rheumatologist, Dr. David Swift ("Dr. Swift"), when there was no conflicting medical opinions on the issue. (Tr. 668.) The court's order directed that, on remand, "the ALJ should ask Dr. Swift to evaluate Johnson's ability to function in the workplace given her fibromyalgia-related symptoms." (Tr. 669.) The court further ruled that the ALJ's decision was unsatisfactory because it did not indicate whether the ALJ considered Johnson's somatoform disorder when making the RFC assessment or explain the ALJ's determination that the claimant's obesity is consistent with a residual functional capacity for a range of sedentary work. (Tr. 670-71.)

On remand, a supplemental hearing was held on March 25, 2008 and, due to time constraints, a second supplemental hearing was conducted on August 25, 2008. (Tr. 745, 788.) At the first supplemental hearing, the ALJ took testimony from Dr. Robert Karsh ("Karsh"), a rheumatologist, who, at the ALJ's request, reviewed Johnson's medical records. Dr. Karsh testified that although the record supported a fibromyalgia diagnosis, he questioned the severity of the condition because Johnson was not taking prescription pain medication and because Johnson reported spending her day doing crafts, yard work and watching a young child. (Tr. 773-74.)

The ALJ did not contact Dr. Swift and did not send Johnson for a physical examination prior to either of the supplemental hearings. However, in advance of the second supplemental hearing, Johnson, on her own initiative, returned to Dr. Swift for an evaluation.[2] (Tr. 744.) At the second supplemental hearing, Johnson submitted a letter from Dr. Swift, in which Dr. Swift opined that Johnson suffers from fibromyalgia. (*Id.*) He also stated that Johnson's complaints of pain appeared credible and that she has been compliant with treatment. (*Id.*) Dr. Swift did not,

---

[2] Due to financial considerations, Dr. Swift did not charge Johnson for the examination. (Tr. 744.)

3

however, provide an opinion regarding Johnson's ability to function in light of her condition. (*Id.*)

On February 4, 2009, the ALJ issued a decision again denying Johnson's claim. (Tr. 604-16.) In his decision, the ALJ evaluated Johnson's disability claim by following the five-step sequential analysis prescribed by the Social Security Regulations.[3] *See* 20 C.F.R. §§ 404.1520 and 416.920. In doing so, the ALJ found that Johnson had not engaged in substantial gainful activity since July 30, 2002, the alleged onset date, and that Johnson had one or more severe impairments: fibromyalgia; seizure disorder, secondary to an epileptic condition; somatoform disorder; depression, not otherwise specified; personality disorder with histrionic features; carpal tunnel syndrome, status post releases, stable with minimal treatment; and obesity. (Tr. 606.) The ALJ further concluded that Johnson did not have an impairment or combination of impairments that meets or medically equals one of the

---

[3] The Social Security Administration uses a five-step process to determine whether a claimant is disabled. These steps are described as follows:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 607.) The ALJ determined that Johnson had the RFC, at best, to perform sedentary work as defined in 20 C.F.R. 404.1567(a), explaining:

> The claimant can frequently push or pull levers with the upper extremities, but she cannot push or pull levers with either or both lower extremities. She cannot crawl or climb ladders. She can occasionally climb stairs, stoop, squat, and kneel. She cannot operate motor vehicles or use air or vibrating tools. She cannot work around moving machinery, where "moving machinery" means machinery that is actually mobile and does not include machines with moving parts such as robotic arms. She cannot work at unprotected heights.
>
> The claimant has no limitation in understanding short, simple instructions, for jobs ranging from those that can be learned by a short demonstration to those that can be learned in less than 30 days. She can remember and carry out short, simple instructions if they are written and available for reference while performing the job. The claimant is unable to understand, remember, or carry out more than short, simple instructions.
>
> The claimant can interact appropriately with the general public only occasionally.  She can interact briefly (one minute or less) and superficially with supervisors and co-workers, but only to discuss job-related processes.  She cannot engage in extended conversation with one individual, where "extended conversation" means lasting more than one minute, and involving multiple questions, and requiring reference to manuals or similar resources.
>
> She has marked limitation with semi-skilled or skilled work. Because of the definition of "marked" that was specifically identified during the hearing, no additional explanation is necessary about specific functional limits.
>
> In the area of responding to changes in a usual work setting, such as a change in her work location or a rearrangement of tools or supplies, the

claimant would require answers to one or two questions, but could then perform adequately. Regarding her ability to respond appropriately to usual work changes in a routine work setting, such as taking a different route to deliver items, the claimant would require a reminder or two from her supervisor but could then perform the task. Similarly, if, for example, the claimant's work involved using boxes and there was a change in the way the boxes were used, she would require advice from her supervisor or co-worker. She would initially experience some confusion and stress, but these would resolve once her questions were asked. The claimant would not require retraining every day.

(Tr. 608-09.)

Based on Johnson's RFC, the ALJ concluded that Johnson was unable to perform her past relevant work as a telephone solicitor, inspector, general merchandise salesperson, customer service representative, department manager and project manager. (Tr. 613.) The ALJ found, however, that there was other work Johnson could perform, such as inspector packager, tester and final assembler. (Tr. 614.) Accordingly, the ALJ determined that Johnson was not disabled and not entitled to benefits. (Tr. 615.)

## STANDARD OF REVIEW

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995).

## ANALYSIS

Johnson makes two primary arguments on appeal. First, Johnson asserts that the ALJ did not follow this court's order of July 27, 2007 because he did not contact Dr. Swift or assess the effect of Johnson's obesity on her ability to work. Second, Johnson argues that the ALJ improperly evaluated the medical evidence of record. Specifically, Johnson maintains that the ALJ erred by not affording Dr. Swift's opinion controlling or substantial weight and by relying on the medical testimony of Dr. Karsh, who has never examined Johnson.

**I.      Compliance with the Court's July 27, 2007 Order**

In his first decision, the ALJ rejected, without any conflicting medical authority, Dr. Swift's fibromyalgia diagnosis. Consequently, the court remanded the case and directed the ALJ to contact Dr. Swift so as to obtain Dr. Swift's opinion regarding Johnson's ability to function in light of her fibromyalgia-related symptoms. Despite this directive, the ALJ failed to contact Dr. Swift. Though the ALJ's failure to comply with the court's order may have been inadvertent, the ALJ's failure to fully abide-by this court's order is concerning. The undersigned strongly cautions the ALJ against such future failures or oversights.

Luckily for the ALJ, his noncompliance with the court's order is not grounds for reversal or remand in this case. Although the ALJ did not personally contact Dr. Swift, Johnson did present to Dr. Swift for an examination in advance of the second

7

supplemental hearing. At the hearing, Johnson submitted a letter from Dr. Swift in which Dr. Swift opined that Johnson suffers from fibromyalgia and that Johnson's complaints of pain appeared credible. (Tr. 744.) Although Dr. Swift did not provide an opinion as to Johnson's ability to function on account of her fibromyalgia, he had the opportunity to do so, as well as to provide any other information he deemed relevant. Johnson and her attorney were aware of the information that the court desired from Dr. Swift, but, like the ALJ, decided not to obtain it. Moreover, albeit not from Dr. Swift, the ALJ did obtain medical testimony from Dr. Karsh regarding Johnson's ability to work in light of her fibromyalgia. Any error attributable to the ALJ's failure to personally contact Dr. Swift is harmless.

In addition to directing the ALJ to contact Dr. Swift, the undersigned ordered the ALJ on remand to explain his determination that Johnson's "obesity is consistent with a residual functional capacity for a range of sedentary work." (Tr. 21, 671.) At a few points in his most-recent decision, the ALJ stated that Johnson's obesity was taken into consideration in assessing her RFC. (Tr. 604, 610.) Once again, however, the ALJ did not attempt to explain how he reached his conclusions with respect to any limitations caused by Johnson's obesity. Despite this repeated short-coming, the court will not remand the ALJ's decision on this basis. Given the functional restrictions outlined by the ALJ, as well as the fact that the ALJ concluded that Johnson's obesity and other impairments limited her to the performance of sedentary work, the ALJ's failure to fully-explain the impact of Johnson's obesity likely had no real effect on the outcome of the case. *See Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996) (quoting *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir.1987) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case.")

## II.     Evaluation of Medical Evidence

Johnson claims that the ALJ failed to afford substantial or controlling weight to the opinion of Dr. Swift, her examining and treating physician. Dr. Swift, who has treated Johnson off-and-on since 2002, opined that Johnson suffers from fibromyalgia and, in treatment notes from 2004, stated that her condition is disabling. (Tr. 433.) Johnson argues that it was improper for the ALJ to reject Dr. Swift's opinion and, instead, rely on the medical testimony of Dr. Karsh, who has never examined Johnson. Dr. Karsh, like Dr. Swift, concluded that Johnson suffers from fibromyalgia. (Tr. 773.) However, Dr. Karsh questioned the severity of Johnson's condition because she was not currently taking prescription pain medication and because Johnson reported spending her day doing crafts, yard work and watching a young child. (Tr. 773-74.)

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Medhaug v. Astrue,* 578 F.3d 805, 815 (8th Cir. 2009). However, a treating physician's opinion "does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Heino v. Astrue,* 578 F.3d 873, 880 (8th Cir. 2009) (internal quotations omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id.* (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). *See also Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (stating that in order for a treatment physician's opinion to have controlling weight, it must not be inconsistent with the other substantial evidence in the case record); *Goff v. Barnhart,* 421 F.3d 785, 790-91 (8th Cir. 2005) (stating that "an appropriate finding of inconsistency with other evidence alone is sufficient to discount [a medical] opinion.").

9

There are multiple inconsistencies in the record which support the ALJ's decision to discredit Dr. Swift's opinion and to accept Dr. Karsh's findings. For instance, the medical evidence shows that Johnson sought treatment for fibromyalgia in 2002 and 2003, however, physical examinations during that time showed that she had normal strength in her arms and legs. (Tr. 326.) Further, after a state agency physician reviewed Johnson's medical records in early 2003, the physician opined that Johnson's impairments did not prevent her from performing sedentary work. (Tr. 246.)

Dr. Swift's treatment notes are also inconsistent with a finding of disability. In April of 2004, Dr. Swift stated that he believed Johnson was disabled "[a]t the present time." (Tr. 433.) However, a few months earlier, in December of 2003, Dr. Swift stated that he was "not adverse" to Johnson beginning a trial period of work, starting on a part-time basis, and gradually increasing to full-time duties. (Tr. 437.) Additionally, in July of 2002, Dr. Swift stated that while he would "go along" with Johnson's bid for short-term disability, he informed Johnson that patients with fibromyalgia do better if they continue working. (Tr. 445.) As stated previously, despite examining Johnson in June of 2008, Dr. Swift did not provide an opinion as to Johnson's current ability to work (Tr. 744.)

Further, Johnson's daily activities, as well as her statements to the ALJ in 2005 and 2007, indicate that Johnson's fibromyalgia is not so severe as to preclude her from performing sedentary work. In 2004, Johnson stated that her daily routine included eating breakfast, attending morning appointments, volunteering at her church, doing crafts, gardening and other yard work. (Tr. 417-418.) In July of 2005, shortly before the first administrative hearing, Johnson stated in her interrogatory responses that she could sit for seventy percent of an eight-hour workday and stand or walk for the remaining thirty percent of the day. (Tr. 214-15.) In her December of 2007 interrogatory responses, Johnson acknowledged that she could sit for six hours in an eight-hour workday and walk or stand for two-hours of that day. (Tr.

680.) She also stated that she could perform most household chores, such as vacuuming, dusting, washing dishes, scrubbing floors, mowing the lawn, making beds, doing laundry, and cooking. (Tr. 682.) Given Johnson's extensive daily activities, the ALJ's decision to reject Dr. Swift's opinion that Johnson's fibromyalgia is disabling was appropriate.

For the reasons stated, and after careful consideration of each argument presented in Johnson's brief, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

IT IS ORDERED that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

July 22, 2010.

> BY THE COURT:
> *Richard G. Kopf*
> United States District Judge

---

\* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.